The Saint Peter Company, Plaintiff in Error, vs. Robert Bunker, Defendant in Error.

ERROR TO THE DISTRICT COURT OF NICOLLET COUNTY.

A settler upon unsurveyed Government lands, entered into a written contract with the Saint Peter Company, the Plaintiff, for the sale of certain portions of the land, and before perfecting his pre-emption, induced the Plaintiff to surrender the evidence of the agreement, with the verbal un- derstanding that after pre-emption he would again make and enter into the same agreement with the Company, the object of the surrender being to evade the provisions of *Section thirteen of the Act of Congress of September* 4, 1841, requiring the oath of the applicant that he had not " made any agreement or contract in any way or manner, by which the title he might acquire should enure to the benefit of any person except himself," &c.   The Defendant afterwards refused to comply *with the verbal agreement, but sold the property to another party.*  In an action by the Company to recover the amount of the purchase money, and also their interest in the amount for which the Defendant sold the property after acquiring title, *Held* that such a contract is in violation of law and against public policy, and Courts will not lend their aid in enforcing it.  It was a contract *malum in se,* and money paid thereon cannot be recovered back.

Points and Authorities of Plaintiff in Error.

*First.*—The complaint does state facts sufficient to constitute a cause of action.

Money paid for the causes, and under the circumstances stated in the complaint, may be recovered back by civil action. 8 *Term. Rep.* 516; 3 *B. & P.*, 181; 2 *Starkies Ev.* 114 *and* 118; 1 *Term Rep.* 133; 2 *Burr Rep.* 1010; 3 *Starkies Ev.* 1614; 5 *East R.* 449; 1 *Camp. Rep.* 293; 2 *Esp. C.* 639; 1 *Tawn Rep.* 65; 2 *Greenleaf Ev. Sec.* 124; 2 *Bl. Rep.* 1073; 1 *H. Bl. Rep.* 65; 2 *Term Rep.* 763; 3 *Ib.* 25, 551; 4 *Ib.* 166; 4 *East Rep.* 372; *Doug.* 138, 696; *B. N. P.* 133; 1 *B and P.* 306; 1 *Chit. Pl.* 388 *and* 389; 1 *Nott and McCord,* 210; 5 *Hills Rep.* 107; 2 *Saun. Pl. and Ev.* 671, 673 · (*marginal paging*); 4 *Denio. R.* 51; 15 *John Rep.* 503; 13 *Wend. Rep.* 33; 16 *Ib.* 25; 2 *Hill Rep.* 485; 5 *Ib.* 389; 7 *Mass. Rep.* 14, 31; 5 *Ib.* 133, 138; 4 *Ib.* 135; 1 *Pick R.* 328; 5 *Ib.* 480; 21 *Ib.* 1, 9, 14; 4 *Com'k Rep.* 249, 396, 1 *Cow. Tr.* 128 *2nd Edition and authorities there cited;* 8 *Cow. Rep.* 20; 6 *Ib.* 90; 2 *Seld. Rep.* 203; 2 *Ind. Rep.* (*Carters*) 413; 6 *Black. R.* 21.

The promise made by Defendant to Plaintiff upon the surrender and cancellation of the deed, as stated in the complaint, was valid and binding in the law, and the Plaintiff is entitled to recover the damages claimed for the non-performance thereof by the Defendant. And the Plaintiff is also entitled to recover against the Defendant, the amount of moneys paid for surveying the land, making and recording plat &c., as stated in the complaint.

*Second.*—The complaint shows that the chose in action for the money paid to Defendant under the contract and for the deed and covenants mentioned therein, and for the moneys paid for the surveys, &c., is the property of the P laintiff; that the Plaintiff is the owner and holder thereof, and "the real party in interest."

*Third.*—Under the demurrer in this action, the Defendant cannot dispute the Plaintiff's capacity to sue, or the Plaintiff's right to the said cause of action, if the facts alleged are sufficient to constitute a cause of action at all, to create a liability against the Defendant. It denies the sufficiency of the facts to constitute a chose in action, but does not deny or put in

issue the Plaintiff's capacity to sue or its right to such chose, if one exists at all. *Abbott's Pleadings* 450, *Notes* (*g*) *and* (*h*); 3 *Abbott's Pr. Rep.* 119; 11 *How. Pr. Rep.* 216; *E. D. Smith's C. P. R.* 213, 373; 1 *Tillinghast and Shearman's Practice* 465; 6 *Abbott's Pr. Rep.* 205; 7 *Ib*, 305; 1 *E. D. Smith C. P. R.* 142; 3 *Ib.* 243.

Points and authorities of Defendant in Error :

*First.*—The Plaintiff, we think, has no cause of action. The complaint does not state facts sufficient to constitute a cause af action.

1. The subject matter of the contract was a right en- joyed by Defendant, to enter Government land as a pre-emp-tor, which was not the proper subject matter of a contract. A contract touching a pre-emption right is void. *Brightly Digest, p.   See   ; Camp vs. Smith,* 2 *Minn.* 155.

2. It was an impossible undertaking on the part of the Saint Peter Land Company, or the present Plaintiff to enter Defendant's claim. 2 *Minn. R.* 155, *S. L.* 1856, *p.* 73; *U. S. Laws Brightly* 487, *Sec.* 171.

3. It was in violation of law, and against public policy, and void. The new promise to renew was not in writing, and void also. *Pub. Stat. Minn.* 458; *Brightly* 475, *Sec.* 98; *Pub. Stat. Minn.* 385, *Secs.* 1 *and* 2; 13 *Ves. Jr.* 313; 5 *Johnson* 322; 4 *Peters* 65; *Cond. R.* 184, 187, 188, 410, 436, 437; 1 *Smith S. L.* 489, 494, 597, 607; 6 *Peters*, 298, 299. 304, 305, 308; 2 *Minn. R.* 155, &c.

4. Plaintiff had no interest in the contract made with the Saint Peter Land Company, and no consideration was paid for the new promise, and had nothing to support it. The promise was a *nudum pactum. Chap.* 40 *Rev. Stat.; S. L. Minn.*, 1856, *p.* 75.

*Second.*—There is no proper subject matter of a contract or suit, set forth in the complaint. A pre-emption right is a *personal* franchise, not a *corporate*, and cannot form the subject matter of a contract, or of a right in action; 2 *Minn. R.* 155, 157; 2 *Kent* 357; 3 *Kent* 572; 2 *Blach. Com.* 37; *Smith on Cont.* 202, 203, (as to contracts where consideration had

failed,) and the distinctions there made. This is not a case of failure of consideration referred to in Plaintiff's Brief, sustained by cases cited from 2 *Greenleaf Ev. Sec.* 124 *&c. et. al.* (*See Plaintiff's Brief.*)

*Third.*—Contracts in violation of law, and against good policy are void, and money paid on them cannot be recovered back.

The rule examined where money can be recovered back. The Plaintiff's rule as quoted from 1 *Greenleaf Ev. Sec.* 208, as samples of the one, and 2 *Greenleaf Ev.* 111, as samples of the correct rule in this case. See also the following authorities. *Armstrong vs. Toller,* 6 *Peters* 298, 299, where the rule is settled against the rule laid down in Plaintiff's Brief. Also *Bartle vs. Coleman,* 4 *Peters* 189 ; 6 *Peters pp.* 298, 305 ; 4 *Peters* 410, 436, 437 ; 5 *Johns.* 332 ; 13 *Ves. Jr.* 313.

The rule in Blackstone between *mala prohibita,* and *mala in se,* exploded.

When the parties stand in *pari delictum* neither can sue. If not a case of *pari delictum* the innocent party may sue. *W. W. Story, Cont. Sec.* 162 ; 2 *Story's Eq. Jur. Sec.* 298 *and notes* ; 2 *Story R.* 109 ; 3 *Ves. Jr.* 612 *and note* (*a*) ; 4 *Ves.* 811, 173, 181 ; 5 *Ves.* 173, 181 ; 7 *Ves.* 469 ; 11 *Ves.* 168, 533, 536 ; 18 *Ves.* 397 ; 1 *Smith, L. C.* 489, 507 ; 2 *Smith, L. C.* 467, 458 ; *Smith on Cont.* (1856) 207. The rule in equity is to the same result as the rule at law ; *in pari delicto potior est conditio defendentis;* 2 *Kent Com.* 466, 468 ; *Smith on Cont.* 202, 203, 204, 209.

CHATFIELD & BUELL, Counsel for Plaintiff in Error.

COX & BRYANT, Counsel for Defendant in Error.

*By the Court.*—ATWATER, J.—The complaint in this action alleges that the Saint Peter's Land Company, (the assignors of the Plaintiff,) in May, 1854, entered into an agreement in writing with the Defendant, Robert Bunker, "whereby he, the said Defendant, for the considerations mentioned in the said agreement in writing, agreed to sell to the said Saint

Peter's Land Company all his right, title and interest in and to the following piece or parcel of land, situate in Nicollet County, and then known and described as follows, to wit: being the front half of one hundred and sixty acres of land, known as "Bunker's claim" lying west &c., reserving and excepting however from said tract of eighty acres, every alternate block of a Town plat proposed to be extended by said Company a distance of eighty rods over said eighty acres, also reserving &c.; and moreover to pay the proportion of the expense of surveying, laying out, platting and recording said premises that 40 acres bears to 720. And the said Company in and by the said agreement in writing, agreed to pay the said Defendant, the sum of one hundred and fifty dollars for the said premises, and to extend the plat of the proposed town of Saint Peter over the same, and to enter the said eighty acres, when the same should become liable to entry, and to convey to the said Defendant the said alternate blocks therein."

The complaint then goes on to allege, that the Company paid the said sum of $150 to the Defendant, in pursuance of said agreement, and that the Defendant executed a quit claim deed of the premises to D. H. Dustin for the use and benefit of the Company, and that the Defendant did in and by the said deed of conveyance, covenant and agree, that he would keep the said east half of his claim thereby granted, constantly occupied and possessed, until the same should come into market, and a title thereto could be secured, and that he would defend the same from all intrusions and trespassers, and the said Dustin agreed to enter the same, and convey the alternate blocks to the Defendant, and avers performance of all things on the part of the Company, which by the terms of the contract it was required to do.

After reciting other matters unnecessary here to notice, the complaint goes on to state, "that afterwards, and after the Government surveys of the said lands had been made and established, and in or about the month of June 1856, the said Defendant was desirous to enter and purchase the land, included in his said claim, or such lands, included in said claim or adjoining the same within Government subdivisions, as he was by law entitled to enter and purchase, by pre-emption;

and not to remain in and hold possession thereof, until the said land should be brought into market, and subjected to a public sale; but was unable to make such entry and purchase by pre-emption, while the said sale and deed of conveyance to the said D. H. Dustin remained outstanding against him in force and uncancelled. And the said Defendant then requested this Plaintiff, who was the owner of the said deed, and held the same in possession, to surrender and deliver to him the said deed; the same never having been recorded, to the end that he, the said Defendant, might be thereby enabled to purchase and enter the said land by pre-emption, and the said Defendant then and there, promised and agreed, to and with the Plaintiff, that if this Plaintiff would surrende rand deliver to him the said deed, he the said Defendant would, after he had so made his entry and purchase of the said land, again make the said agreement with this Plaintiff, and would fully and fairly carry out and perform the terms and conditions contained in the said deed, notwithstanding the surrender and delivery thereof to him as aforesaid, and would also convey to the Plaintiff lands which he should so enter, lying within the claims owned by the Plaintiff. And this Plaintiff, relying upon the said promise and agreement of the said Defendant and in consideration thereof, did, pursuant to the said request of the said Defendant, surrender and deliver to him the said deed, and the said Defendant did thereupon, afterwards enter and purchase at the proper Land Office by pre-emption, the said lands, or such parts or subdivisions thereof and of lands adjoining, as he was by law entitled to so enter and purchase."

The complaint then alleges a breach of the agreement on the part of the Defendant, and that he sold the lands for nineteen thousand dollars, and demands judgment for the sum of one hundred and fifty dollars paid the Defendant as above stated, and fifty dollars expenses of surveying, &c., and the further sum of $6334, parcel of the moneys received by the said Defendant for said land.

The Defendant demurred to the complaint, on the ground that it did not contain facts sufficient to constitute a cause

24

of action.   The Demurrer was sustained, and the Plaintiff brings the cause to this Court by writ of error.

The view which the Court takes of the contract above set forth renders it unnecessary to examine the other points raised and discussed on the argument of the case, as the contract set forth in the complaint constitutes the only cause of action.

By the first agreement made between the Saint Peter's Land Company and the Defendant, it appears that the latter agreed to convey a part of his claim to said Company for certain considerations therein named.   This agreement was executed on the part of the Defendant, by conveying the land specified for the use of the Company, and partially executed by the Company.   This agreement was in writing, and seems to have been valid and binding, as the Company might lawfully enter the premises specified, upon complying with the provisions of the Act for the entry of Town Sites, and so long as the Defendant did not propose to pre-empt, there was no legal disability preventing him from disposing of whatever interest he might have in the premises.

But this agrement was afterwards cancelled, and a new one entered into between the Plaintiff and Defendant.   This new agreement was not in writing, and was made, as appears from the complaint, for the purpose of enabling the Defendant to pre-empt the premises described in the complaint, which he could not, or did not wish to do, while the deed to Dustin was outstanding.   By this arrangement or agreement, it was provided, and the Defendant undertook and promised, that if the Plaintiff would surrender and deliver to him the said deed, he, the Defendant, would, after he had made his entry and purchase of said land, again make the same agreement with the Plaintiff, and would fully and fairly carry out and perform the terms and conditions contained in the said deed, notwithstanding the surrender and delivery thereof to him, &c. The object of the Defendant in this arrangement, was clearly, to enable him to evade the provisions of the Act relating to pre-emptions, or rather to do away with the written evidence of such evasion, for the existence of the last agreement set forth in· the complaint, at the time of pre-emption, would be

a violation of both the letter and spirit of the Act.  By the thirteenth Section of the Act of Congress of fourth of September, 1841, it is provided among other things, that before any person claiming the benefit of that act, shall be allowed the lands claimed, he shall make oath before the receiver or register of the land district in which the land is situated, that he has not "settled upon and improved said land to sell the same on speculation, but in good faith to appropriate it to his own exclusive use and benefit, and that he or she has not directly or indirectly, made any agreement or contract in any way or manner, with any person or persons whatsoever, by which the title he or she might acquire from the Government of the United States, should enure in whole or in part, to the benefit of any person except himself or herself."  In the face of this law, it is evident, that if the contract set up in the complaint existed at the time the Defendant pre-empted, he must have been guilty of perjury in making his entry.  By this agreement, he promised to convey to the Plaintiff eighty acres of his claim, save certain reservations, certainly an indirect, if not direct agreement, by which the title he might acquire from Government, s hould enure in part at least, to the benefit of the Plaintiff.  Such a contract is in violation of law, and against public policy, and cannot be sustained. The evil against which the statute was aimed already exists to an alarming extent, and Courts of justice certainly should give no sanction to any attempt to evade the letter or spirit of the law.  If contracts of this nature are sustained by the State Courts, the force of the statute against the same would be greatly impaired, if not entirely destroyed, and the effect would be hardly less than to offer an inducement for the commission of perjury.

But the Plaintiff claims that even if he is not entitled to recover the value of the land, which has been converted by the Defendant to his own use, he is at least entitled to recover the $150 paid the Defendant and the expense of the surveys.  Had the first contract simply been rescinded, and the last not made, we think the position would be tenable, but under the allegations of the complaint, we think the Plaintiff stands in no better position in regard to these items, than

with reference to his recovery of the value of the land. There seems to have been no understanding that the Defendant should return the $150, on the contrary, the complaint alleges, that after entry, the Defendant would make the *same agreement*, with the Plaintiff; and as by the first agreement he was to have one hundred and fifty dollars, in part consideration of the sale, so, it is clear, did that form a part of the consideration for the new contract. When the first agreement was made it is true he had not received the consideration, (which was afterward paid him) and at the time of the making of the second agreement he had the same; and consequently the second agreement in form would not be precisely the same as the first; but we think it evident the only change in substance contemplated by the parties, was that the Defendant should enter the land instead of the Plaintiff. The money must therefore be considered as paid, and the expense of surveying incurred, upon the new contract, and the nature of that contract must determine the right of the Plaintiff to recover.

We understand the counsel for the Plaintiff in Error to admit that money paid on a contract *malum in se*, cannot be recovered back, but that it may be so on a contract *malum prohibitum*, and that the contract in the case at bar belongs to the latter class. Whether the rule be as broad as claimed in reference to the latter class of contracts, it is perhaps unnecessary to inquire, since we regard the contract in question as *malum in se*, and there can be no doubt, that money paid on such a contract cannot be recovered back. A contract to sell government lands, (to which a party has no title) would not of itself be morally wrong. But a contract made before, and in view of or for the purpose of making a pre-emption, to convey the land pre-empted, can only be performed by the commission of perjury, a fact well known to the parties at the time of making the contract. The contract upon the very face of it bears the evidence of moral turpitude, and the law can aid neither party either in enforcing it, or recovering back what has been paid under it. If the Plaintiff has suffered from the gross breach of good faith on the part of the Defendant, he at least had notice of what he

might expect at his hands, from his readiness to agree to violate the law, and while good conscience can in no measure tolerate the conduct of the Defendant, it cannot sympathize with the Plaintiff in his misfortune, since his conduct has been instrumental in enabling the Defendant to perpetrate his wrong.

The judgment below is affirmed.