# W. C. CLARK AND JAMES CHAMBERS, APPELLANTS, *v.* J. R. BAYLEY, RESPONDENT.

HOMESTEAD—EXEMPT FROM LIABILITY FOR DEBTS CONTRACTED PRIOR TO ISSUING OF PATENT.—When a party having availed himself of the benefits of the first section of the Homestead Act of Congress, May 20, 1862, and taken a homestead under the first and second sections of that act, afterwards, before the expiration of five years' residence, commutes under the eighth section of that act, and obtains patent by the payment of money: *Held*, that the land so acquired is a *homestead* and exempt from liability for debts contracted prior to the issuing of the patent.

TRUST—HOMESTEAD CANNOT BE HELD IN.—The entry of a homestead under the act of Congress of 1862, by one in trust for another, is forbidden by law, and a court of equity will not decree that any such trust can be implied.

APPEAL from Benton County.

This was originally an action of ejectment, instituted by the respondent Bayley against the appellants Clark and Chambers, to recover about fifty-three acres of land situated in Benton County, Oregon. The appellants filed an answer to the complaint in ejectment, and at the same time filed a complaint in equity in the nature of a cross-bill, under ? 377 of the Civil Code, praying that they be declared the equitable owners of the premises in question, and that respondent Bayley be enjoined from prosecuting his action of ejectment.

On the 19th of January, 1872, one Thorn made due application at the Oregon City land office to acquire the said land under the homestead laws of the United States. Thereafter he perfected his title to said tract as a homestead, and on the 10th day of December, 1872, patent issued to him therefor in due form. On the 16th of September, 1873, Thorn and wife conveyed the homestead tract to the respondent Bayley.

The cross-complaint alleges that prior to April 21, 1873, one Simpson purchased of Thorn an equitable interest in eleven-twelfths of the land in question; that Thorn continued to hold said eleven-twelfths as the trustee of Simpson; that about April, 1873, the said premises were sold on execution issued upon judgments recovered against Thorn

and Simpson respectively, which judgments were rendered on December 16, 1872, and that at such execution sale appellant Clark purchased the interest of Simpson in said land and appellant Chambers that of Thorn; that these sales were confirmed and sheriff's deeds duly executed to the respective appellants; that appellants took possession and now hold the same under the execution sales; that Bayley knew of appellants' rights when he purchased of Thorn, and that such purchase was fraudulent; that Thorn stood by when the execution sales were made and neither objected thereto nor asserted any claim to the land as a homestead.

The decree of the court below was in favor of Bayley.

*F. A. Chenoweth and R. P. Boise*, for Appellants.

A homestead may be mortgaged. (33 Iowa, 374.) A homestead right is a personal privilege, and if the holder abandons such right the homestead may be sold on execution. (26 Barb. 374; 14 Wall. 463.)

The tract in dispute was the partnership property of Thorn and Simpson, and therefore cannot be a homestead.

*R. S. Strahan, John Kelsay and W. W. Thayer*, for Respondent.

The rule of *caveat emptor* applies in all its rigor to judicial sales of real property. (Rorer on Judicial Sales, 459.)

The land in dispute was a homestead and not subject to levy and sale on execution for any debt existing before patent issued. (14 Iowa, 569; 38 Cal. 300; Homestead Act, Rev. Stats. U. S., p. 423, § 2296; *Miller* v. *Little*, 47 Cal. 348; *Hubbel* v. *Canady*, 58 Ill. 425; *Green* v. *Marks*, 25 Ill. 221; *Pulliman* v. *Sewell*, 40 Ga. 73; Rorer on Judicial Sales, §§ 1109, 1110, 1122, 1127, 1134; 3 Wall. 335.)

By the Court, SHATTUCK, J.:

Two questions are presented for examination and decision in this case:

First. Did Clark and Chambers acquire any title to the premises in controversy by virtue of the sales upon execu-

tion and the sheriff's deeds described in the agreed statement of facts?·

Second. Are the appellants (Clark and Chambers) entitled, upon the admitted facts, to equitable relief?

It should be stated, before considering these questions, that one of the grounds of equity set up in the complaint, that is, the alleged fraud of the respondent in taking the deed of the property in controversy with an intent to cover it up and prevent the creditors of Simpson and Thorn from applying it in satisfaction of their debts, is virtually abandoned by the agreed statement of facts, and that branch of the case is not before us.

It is also to be borne in mind that the appellants claim this property by virtue of sales upon execution *as real property*, and that no question as to whether the mill, by reason of the agreements between Simpson and Thorn, could be treated as personal property, and the possession of it as such recovered by Simpson or his vendee is involved in this case. The appellants claim to represent Simpson's interest only through the judgments and execution sales recited in the agreed statement.

As to the first question above stated, the validity of the judgments and the regularity of the proceedings concerning the sale upon the execution, are admitted; and if the sheriff's sales did not pass the title which Thorn had to the property to the appellants, it was because the property was not subject to such sale, and was not affected by the lien of the judgments, which respondent claims was the case. This claim of exemption is based upon the fact that the land was acquired by Thorn under the act of Congress entitled "An Act to secure homesteads to actual settlers on the public domain," approved May 20, 1862, and that the debts which were the basis of appellants' judgments were contracted before the issue of patent.

The admitted facts show that Thorn applied for this land and filed in the land office the requisite affidavit according to the provisions of § 2 of the act, in January, 1872, and, in December, 1872, perfected his title and received a patent by paying the minimum price under the provisions of § 8 of

said act. The counsel for the appellants contend that, by so acquiring his land (by payment of money instead of by continued residence and labor for five years), Thorn became a pre-emptioner, and that his claim is to be regarded as a pre-emption and not as a homestead. Counsel for the respondent, on the other hand, contend that this land is none the less a homestead because paid for with money, than it would be if the consideration had been labor and continued residence for five years, as required by the second section. No decision of any court upon this point has been cited by either side, and we are to determine the matter upon our own construction of the act, and upon such authority as the Land Department of the Government has furnished.

Upon principle, we hold that land acquired as this was should be deemed to have been acquired under the Homestead Act, notwithstanding the provisions of the eighth section are, that patent shall be issued in such case "as in other cases provided by law, on making proof of settlement and cultivation, as provided by existing laws granting pre-emption rights." These provisions of the eighth section simply prescribe a mode of commuting the homestead, and are appointed as the mode of administering the act in favor of those who have availed themselves of the benefits of the first section, by complying with the requirements of the second section, and wish to pay money instead of time and labor for their land. The title has its inception and its consummation under and according to the provisions of the act. The mere payment of money, under the eighth section, ought not to be treated as an abandonment of the intention to make a homestead claim, unless the law expressly gives that effect to it.

Counsel for the appellants, in support of their view of this question, cite the instructions of the Commissioner of the General Land Office to the registers and receivers, in a circular concerning the homestead law, dated October 20, 1862, and found on page 248 of Lester's Land Laws, etc. This instruction is as follows:

"In a case where full payment is proposed to be made by a party, under the eighth section, he must first make

proof of settlement and cultivation, as required by existing pre-emption laws and instructions; whereupon you will require his homestead duplicate receipt to be surrendered, and will admit the pre-emption as a new and original entry, and issue pre-emption certificate and receipt as in ordinary pre-emption cases."

But this same instruction requires the register and receiver to make proper notes on the certificate and receipt so as to preserve in the record the evidence of the change. This instruction is claimed to have the force of a ruling and decision by the Land Department, and to warrant the conclusion that a title begun under the second section, and consummated under the eighth section, is a pre-emption, and not a homestead.

Upon further examination of the decisions of the Land Department on the subject of homesteads in the years 1866, 1867, and 1868, of which extracts are found on pages 266 and 267 of Lester's Land Laws, it appears that this subject has been directly brought before the department, and distinctly ruled upon. In a case of an entry presented, wherein a homestead had been made and then commuted under the eighth section, and the point was submitted whether the settler could make another entry under the Homestead Act (the sixth section prohibiting more than one grant to the same individual under the act), the ruling of the commissioner was that he could not, and it was expressly decided that "when a party acquires title under any of the provisions of this act, his privilege is thereby exhausted." And, again, when the question was whether a person who has availed himself of the benefits of the homestead, and commuted under the eighth section, could thereafter take a pre-emption (he never having had the benefit of the latter statute), it was held that the proceedings had by the claimant under the eighth section merely consummated his homestead right as the law allows, the payment being a legal substitution for the continuous labor which the law would otherwise exact at the hands of the settler. And on this subject the commissioner further says that "a claim of this character is not a pre-emption, but a homestead, and

will be no bar to the same party acquiring a pre-emption right."

We hold, then, that the land in controversy was a homestead, acquired by Thorn under the act of 1862.

It is claimed, however, by appellants' counsel, that though land be acquired under this homestead law, yet it is not subject to the exemption from liability for debts, provided by the act, if it has been acquired under the eighth section. The position of counsel is that the exemption prevails only when the title is acquired by the continuous labor exacted by the second section. The phraseology of the section providing for the exemption does not furnish any grounds for this construction. The fourth section declares: "That no lands acquired under the provisions of this act shall, in any event, become liable to the satisfaction of any debt or debts contracted prior to the issuing of the patent therefor." If our position—that land entered under the second section, and commuted under the eighth section, is a homestead, and that it must be held to have been acquired under the provisions of the act in question—be a correct one, then surely the fourth section must apply to this land; for the words of the section are general, "No lands acquired under the provisions of this act," etc., and do not admit of any such exception as counsel claim. The intention of Congress to exempt such lands as the tract in controversy, we think, is clear, and ought not by any attempted construction to be defeated.

Counsel further claim that the benefits of the exemption provided by the fourth section may be waived, and must be deemed waived whenever the homestead donee removes from the land, and ceases to use it for a residence and home. This question we do not consider, for there is no evidence before us that Thorn had left this land, or ceased to reside upon it as a homestead when the levy and sale upon execution were made.

It is also claimed that Thorn waived his rights as a homestead claimant and submitted to a transfer of the title by the execution sale because he did not forbid the sale and give notice of his claim under the act above referred to. No authority for this position is cited, except cases under

statutes providing for the exemption of personal property, and cases where a debtor, after a levy on his real estate, is allowed to select and have admeasured to him a homestead of specified extent and value, which is not this case, and no such ruling ought to prevail here.

It is also claimed that the sale and conveyance to Bayley was an abandonment of the exemption, and that the appellants' deeds, though not effectual to convey to them an immediate right of possession at the time of their execution, became operative and took effect when Thorn attempted to sell to Bayley. This position can be sustained only on the assumption that the exemption from liability for debts operates merely to suspend the ordinary effect of a forced sale upon execution; in other words, it assumes that the lien of judgments operates on these homestead claims, notwithstanding the exemption, no less than upon other lands of the debtor, and that a sale upon execution will carry the fee to the purchaser incumbered only by the right of the debtor to continually occupy as a homestead, and the moment the debtor by any means ceases to occupy as a homestead, the title and right of possession become absolute in the execution purchaser; or in case no sale has taken place under the judgments, the lien will give a preference to the judgment creditor over a voluntary vendee of the debtor. The authorities cited by counsel in support of this view are under statutes entirely different in terms from this Homestead Act; they have arisen where statutes of exemption have been strictly construed, and the terms of exemption have been limited to "*sales* upon execution," or "*forced sales* upon execution or final process from a court."

In these cases the ruling has been that the terms employed did not exempt the property from being bound and charged by a judgment, but from *sale* on execution only while the exemption should continue in force—that is to say, so long as the debtor should occupy the land as a home; and consequently, whenever he should attempt to sell to another, the judgment creditor might seize it in satisfaction of his debt.

This construction of the State Homestead Acts logically

results in making "the homestead of the unfortunate debtor his prison," and in compelling him to confine his energies to that particular locality for all his life, or forego the advantages of the statute. The terms of this act of Congress are of broader meaning, and evince a more liberal intent. "No lands acquired under the provisions of this act shall, *in any event,* become liable to the *satisfaction of any debt* or debts, contracted prior to the issuing of the patent therefor." These terms cannot be rendered effective, in their full scope and meaning, unless the homestead claimant should be deemed to hold his homestead absolutely free from all the direct and indirect consequences of his indebtedness contracted prior to issue of patent, and consequently have a power of disposition thereof free from the charge or lien of judgments based upon such indebtedness.

Furthermore, the existence of a lien where there is no power of sale, is denied by many of the authorities cited upon the argument. (Rorer on Judicial Sales, ? 1109, and cases cited.)

In California it has been held, under this Homestead Act, that a homestead claimant who, pending his proceedings in acquiring title, contracted a debt upon patent issued, upon which judgment was rendered against him after patent, could sell his homestead to a third party and convey to his vendee a good title notwithstanding the judgment. (47 Cal. 349.)

Our conclusion then is, that the appellants did not acquire any legal title to the premises in controversy by the judgments and execution sales mentioned in the statement of facts; that Thorn could and did convey the land to Bayley by the deed of 16th September, 1873, free and discharged from any lien or incumbrance created by the judgments and execution sales recovered and had by appellants.

The other branch of appellants' case relates to their equitable claims. The principal facts upon which equitable relief is claimed are these : Simpson and Thorn, in 1871, formed a copartnership for the purpose of building a steam sawmill and manufacturing lumber for the San Francisco market, in which business Simpson's interest was to be eleven-

twelfths and Thorn's one-twelfth, the capital to be furnished in the same proportions.    Under this arrangement they proceeded as partners to erect the mill on the public lands of the United States, agreeing with one another that they would regard the mill as personal property and not as affixed to the realty.    After their partnership had gone on for about a year, the mill being in the meantime built upon land to which neither had any title, Thorn took steps to obtain the patent under the Homestead Act, as above recited, and did obtain it, as above stated.    No other or new arrangement was made between Simpson and Thorn after patent issued, and the partnership continued till March, 1873, and no settlement of the business of the concern has been had.    Thorn was notified of the execution sales and did not forbid said sales nor expressly claim the land as exempt.    Upon these facts appellants claim that Thorn would be estopped to claim a homestead exemption in this land, and that the legal title which he acquired should be decreed to be held in trust for the benefit of Simpson or his representatives.

The counsel for the appellants, abandoning the question of actual fraud alleged in their complaint, seem to base their rights to relief against Bayley upon an assumption which is not very clear, but we consider it as we understand it.    It is this: That Bayley having taken the deed of September, 1873, from Thorn, with notice, stands in Thorn's place as to the legal title, and that the appellants, by their executions against Simpson & Thorn, and against Simpson alone, and the sales thereunder of the same land, have put themselves in Simpson's place, and, representing his partnership interest, claim an equity against Bayley to be enforced upon this land.

Now, so far as any estoppel is claimed by reason of Thorn's knowledge and evidence, we do not find anything approaching to an estoppel of any kind.    The land was Thorn's homestead.    The record of his title, of which the purchasers were bound to take notice, declared the fact, and Thorn was not called upon to say anything about it, and he did not say anything about it.    It does not appear that the purchasers relied on anything Thorn said or did,

or were misled in any respect by his speech or silence. In such case there is no estoppel.

The other aspect of this equitable claim seems to be taken from the position that Simpson & Thorn and this land are in the situation of parties dealing about property concerning which there are no statutory provisions or public policy that limit the right of disposal and contract.

The argument in this case has proceeded upon the assumption that this case is like one when A. & B., as partners, build a mill on the land of C., and A. afterwards acquires the legal title to the land in his own name from C., there being no limitation by law upon A.'s power to take in *trust* for another. In such case A. would probably be decreed in equity to have taken the legal title for the use of the partnership whether such had been the express agreement with his copartner or not. But in the case before us, this land was public land, and title could be obtained only from the Government. According to the laws under which the Government would dispose of it, the partnership of Simpson & Thorn could not take title to it, and in the capacity of partners they were trespassers. Thorn could not take it in trust for Simpson or for the partnership, for the laws under which alone it could be disposed of had expressly forbidden such a transaction. If Thorn had agreed with Simpson before patent issued that the homestead title should be obtained for the benefit of the copartnership, then he must have committed perjury in obtaining the title, for the second section of the act required him to swear that the land was taken for his own use exclusively, and not directly or indirectly for the benefit of another, and heavy fines and imprisonment are the penalty of false swearing in such a case. Contracts in violation of such provisions of law are void, and are never enforced. (5 Minn. 199; 19 Wallace, 646.)

If Thorn could not lawfully have made, in express terms, a contract of this kind, none will be implied, and equity will not decree any relief in such a case. Furthermore, it may be said Simpson's claim against Thorn, by virtue of the partnership, seems to have originated before patent for

the land issued, if not before any settlement at all had been made by Thorn, and might properly be regarded in the light of a debt contracted before the issue of patent—as to which the land was exempt from liability.

It follows from these views that the judgment and decree below must be affirmed.