Joseph McCorkell v. O. F. Herron, Sheriff, and T. R. North, Appellants, and Joseph McCorkell v. O. F. Herron, Sheriff, and Chicago Lumber Co., Appellants.

**Government Homestead:** EXEMPTION: ABANDONMENT. One who
1  enters land as a government homestead, under the statutes of the United States, by commuting the same. and paying to the government the minimum price for the land and thus obtaining a patent therefor, does not thereby abandon the homestead and convert the entry into a pre-emption, but the homestead thus acquired is exempt from judicial sale for debts contracted prior to its acquisition the same as though the owner had resided upon the same and cultivated the land for the period of five years.

**Estoppel by deed.** The recitals in a patent to government land
2  do not operate as an estoppel as against the grantee and in favor of a stranger to the title; nor are erroneous recitals therein binding on the grantees.

**Exemption of government homestead:** ABANDONMENT. A home-
3  stead acquired by the entry of government land is exempt for all time from liability for debts of the grantee contracted prior to its acquisition, so that there can be no abandonment which will destroy the federal exemption.

*Appeal from Plymouth District Court.*— Hon. F. R. Gaynor, Judge.

Tuesday, June 13, 1905.

Both of these cases are suits in equity, asking that the defendants be restrained from selling the northeast quarter of section 13, township 93, range 48, Plymouth county, Iowa, on general executions issued on judgments against Joseph McCorkell in favor of the defendants North and the Chicago Lumber Company, one of which was rendered in 1880, and the other in 1883. In September, 1887, the plaintiff entered the land in question as a homestead under the provisions of chapter 5 of title 32 of the Revised Statutes of the United States [U. S. Comp. St. 1901, page 1386], paying the required fee thereof, and receiving a receipt for the money so paid; the receipt stating that the entry was made under section 2290 of the statute [U. S. Comp. St. 1901, page 1389]. In 1889 McCorkell commuted his homestead entry under section 2301 of the Revised Statutes [U. S. Comp. St. 1901, page 1406] by paying $200 in cash for the land, and he then received a patent therefor. In November, 1902, the land was levied on to satisfy the defendant's judgments. The trial court held that the land was exempt to the plaintiff, and rendered judgment accordingly. The defendants appeal.— *Affirmed.*

*Gallaher & Graham,* for appellants.

*Erickson & Stickney,* and *Zink & Roseberry,* for appellee.

Sherwin, C. J.— Sections 2289 and 2290 of the Revised Statutes of the United States [U. S. Comp. St. 1901, pages 1388, 1389] provide for the entry of public lands for homestead purposes, and the mode of procedure necessary to make the entry. Under section 2291 of the statute [U. S. Comp. St. 1901, page 1390], the entryman is not entitled to a final certifi-

1. Government
homestead:
exemption;
abandonment.

cate or patent until the expiration of five years from the date of his entry, and only then upon proof that he has resided upon and cultivated the land for the term of five years immediately succeeding the time of making the affidavit required by section 2290. Section 2296 [page 1398] provides that " no lands acquired under the provisions of this chapter shall in any event become liable to the satisfaction of any debt contracted prior to the issuing of the patent therefor," and section 2301 [page 1406] is in the following language: " Sec. 2301. Nothing in this chapter shall be so construed as to prevent any person who has availed himself of the benefits of section twenty-two hundred and eighty-nine, from paying the minimum price for the quantity of land so entered, at any time before the expiration of the five years, and obtaining a patent therefor from the government, as in other cases directed by law, on making proof of settlement and cultivation as provided by law, granting preemption rights." It was under the last section that the plaintiff commuted his homestead entry, and the appellants contend that by so doing he abandoned his homestead right, and elected to and did acquire title as a pre-emptor, under the provisions of the pre-emption statute, and that the exemption provided by section 2296 cannot be applied to the title so acquired.

The exemptions of the statute apply only to lands acquired under the provisions of the chapter relating to homesteads, and, of course, if the plaintiff's title was not so acquired, he cannot avail himself of the statute. At the time of the entry in question the laws of the United States also provided for the pre-emption of public lands, and the same person was entitled to pre-empt and homestead, but he could exercise either right but once. Under the homestead law, three things must be done in order to constitute an entry on public lands: The applicant must first make an affidavit setting forth the facts which entitle him to make such entry; he must make formal application; and, third, he must pay

the fee required.   When these requisites are complied with, and the certificate of entry is executed and delivered to him the land is entered.   *Hastings R. Co. v. Whitney,* 132 U. S. 357 (10 Sup. Ct. 112, 33 L. Ed. 363).   And thereafter, although a patent has not issued, he has an inchoate title to the land, which is property; and, if he complies with the other conditions of the law, he becomes invested with full and absolute right to a patent, which, when issued, relates back to the date of the settlement.   *Nelson v. Northern Pac. R. Co.,* 188 U. S. 108 (23 Sup. Ct. 302, 47 L. Ed. 406); *Red River, etc., R. Co. v. Sture,* 32 Minn. 95 (20 N. W. 229).   Actual settlement, cultivation, and improvement were also necessary conditions for an entry under the pre-emption law.   Section 2301, it will be observed, provided that the settler might pay the minimum price for the land so entered at any time before the expiration of the five years, and receive patent therefor, " as in other cases directed by law." Reading only so much of the section, and construing it only in connection with the provisions of the pre-emption statute, it would be difficult to reach any other conclusion than that it, in effect, provided for an abandonment of rights under the homestead law, and an election by the settler to avail himself of the benefits of the law granting pre-emption rights, for the preliminary requisites were practically the same in both cases.   But the section should receive a broader interpretation, and be construed in the light of the entire homestead statute, and with its purpose and intent clearly in mind.   The concluding sentence of the section says that a patent shall " issue on making proof of settlement and cultivation as provided by law granting pre-emption rights." This language, to some extent, at least, indicates a purpose to treat the payment provided for in the section as in lieu of the further time and labor required to perfect the title, and not as an exercise of the pre-emption right.

The purpose and policy of the homestead act were to encourage the settlement and improvement of the public

lands. And the purpose of the exemption of such lands from sale for antecedent debts was for the benefit of the settler and his family; and it is a well-settled rule that all exemption laws are to be literally construed. The language of the exemption section is very broad. It says that "no lands acquired under the provisions of this chapter shall in any event become liable to the satisfaction of any debt contracted prior to the issuing of the patent therefor"; and, if it can fairly be said that one who commutes his homestead entry has so acquired his land, it must be given effect. The decisions on this point are not numerous, and, as the question involves the construction of the land laws of the United States, we may properly look to the construction placed thereon by its officers. The Land Department held as early as 1868 that a person who commuted under the homestead act could thereafter take a pre-emption, and that the commutation merely consummated his homestead right, and was not a pre-emption. *In re James Brittin* (decided in 1886) 4 Land. Dec. Dep. Int. 441; *Cotton v. Struthers* (Oct., 1887) 6 Land. Dec. Dep. Int. 288; *In re Hewit* (June, 1889) 8 Land. Dec. Dep. Int. 566. These decisions, while not binding on the courts, are entitled to consideration as showing the construction given to the act by the department officers. *Hastings R. Co. v. Whitney, supra.* Furthermore, the construction placed on the act by Congress itself is very material. The pre-emption law was repealed by Act of March 3, 1891, chapter 561, 26 Statutes 1095, except the sections relating to school lands, and to county seats of justice; and by the same act Congress amended section 2301 by providing that commutations should only be made after the expiration of 14 calendar months from the date of the entry, leaving the section in all other respects as it was before. This was a construction of the act by Congress which should not be disregarded, and which indicates quite clearly that a commutation of a homestead entry was not intended to be an abandonment thereof, and a pre-emption instead.

It is said, however, that the commutation might be made under the act of April 24, 1820, chapter 51, 3 Statutes 566, providing for the sale of the public domain. There can be nothing in this contention, however, because, if it was intended to make the commutation a purchase under that act, the law would not have required proof of settlement and cultivation as provided by law granting pre-emption rights. Relying to some extent on the decisions of the Land Department, the same conclusion was reached in the following cases: *Johnson v. Bridal Veil Lumbering Co.*, 24 Or. 182 (33 Pac. 528); *Clark v. Bayley*, 5 Or. 343. And such is also the holding in *Lewton v. Hower*, 18 Fla. 872, and in *Baldwin v. Boyd*, 18 Neb. 444 (25 N. W. 580). In *Thrift v. Delaney*, 69 Cal. 188 (10 Pac. 475), relied upon by the appellants, it was held that a commutation under section 2301 created a new title by pre-emption, and that an action in ejectment could be maintained thereon, notwithstanding an adjudication under the homestead claim prior thereto. We think the construction that we give to the statute is in accord with its spirit and intent, and in accord with the exemption laws of this state.

The patent issued to the plaintiff recited that full payment had been made according to the provisions of the act of April 24, 1820, and that the tract was purchased by Joseph McCorkell. The patent was put in 2. Estoppel by deed. evidence by the plaintiff, and the appellants contend that its recitals are conclusive on the appellee as an estoppel. Whatever the rule applicable to a controversy between the grantor and grantee, it is manifest that a stranger to the title cannot object to a disclosure of the real facts. Devlin on Deeds (2d Ed.) sections 996, 1278, 1279; *Hart v. Meredith*, 27 Tex. Civ. App. 271 (65 S. W. 508); Underhill on Evidence, section 207; Jones on Real Prop., section 256; *Lawless v. Stamp*, 108 Iowa, 601. Moreover, if the patent erroneously recited the facts under which the conveyance was made, it was without authority,

and would not be binding. Land officers are merely agents of the law, and they have no authority to insert in a patent any other terms than those of conveyance, with recitals showing compliance with the law and the conditions which it prescribed. *Deffeback v. Hawke,* 115 U. S. 392 (6 Sup. Ct. 95, 29 L. Ed. 423.)

It is also argued that the recording of the patent in Plymouth county estopped the plaintiff from now asserting that its recitals are not correct. As to this point, it is sufficient to say that such an estoppel was not pleaded.

After the appellee had paid for the land, but before he had received a patent therefor, he conveyed it, and, as we understand the record, surrendered the possession thereof to

3. EXEMPTION OF GOVERNMENT HOMESTEAD: abandonment. the purchaser. This conveyance was afterwards decreed to be fraudulent, and was set aside. The appellants urge that the conveyance and surrender of possession constituted such an abandonment of the homestead as destroyed the exemption under the United States law. Under the statutes of this state, a valid sale, accompanied by possession, would undoubtedly be an abandonment. But the homestead law of the United States does not contemplate an actual occupancy of the land after the title has vested in the patentee. On the contrary, it provides, by implication, at least, that it need not be so occupied for a longer period than five years, and not even for that length of time if commutation be made; and, as we have seen, section 2296 provides that no lands acquired under the act shall in any event become liable for antecedent debts. If this language be given its full force and meaning, a homestead is forever exempt from liability for the debts of the patentee contracted before the patent issued. Congress had the undoubted right and power to dispose of the public lands as it saw fit, and to place such limitations on its grant as seemed just and wise. It had the absolute right to say that lands acquired under the homestead law should always be beyond the reach of the class of creditors

named, whether the lands were occupied by the patentee or not; and this is true, because no state or individual could be injured by such limitation. And in our judgment, such was the intent of the broad language of the act. It has also been so construed in *Brandhoefer v. Bain,* 45 Neb. 781 (64 N. W. 213), and in *Van Doren v. Miller,* 14 S. D. 264 (85 N. W. 187.)

On the whole case, we are satisfied that the judgment below was right, and it is *affirmed.*