BOVEY-SHUTE LUMBER COMPANY, a Corporation, Respondent, v. OSCAR ERICKSON, Simon Simonson, Northern Land & Mortgage Company, a Corporation, et al., Defendants, Northern Land & Mortgage Company, Appellant.

(170 N. W. 628.)

**Public lands — mechanic's liens — homesteads.**

Under § 2296, U. S. Rev. Stat. which provides that no lands acquired under the homestead laws of the United States shall in any event become liable to the satisfaction of any debt contracted prior to the issuing of the patent therefor, a mechanic's lien which arises by operation of law upon the filing of a lien statement for building materials furnished does not attach to land acquired under the homestead laws, where the debt was contracted and the materials furnished before the patent was issued.

Opinion filed November 16, 1918. Rehearing denied December 24, 1918

From a judgment of the District Court of Ward County, *Leighton,* J., the defendant, Northern Land & Mortgage Company, appeals.
Reversed.

*Hanchett & Johnston,* for appellant.

Lands held under the United States Homestead Laws prior to the issuance of patent shall not in any event be held liable to the satisfaction of any debt contracted prior to the issuing of the patent therefor. U. S. Rev. Stat. § 2296; Comp. Laws 1913, § 6824; Green v. Tenold, 14 N. D. 46.

In that case it was decided and practically conceded that there could not be any lien upon the land for the reason that such land was, under the Federal statutes, exempt from mechanics' liens prior to the issuance of patent; but the trial court did hold that the lien was good upon the buildings and entered judgment directing the issuance of a special execution against the buildings and for their sale and removal from the land. Paige v. Peters, 70 Wis. 178, 35 N. W. 328.

*McGee & Goss,* for respondent.

A homestead entryman has, after making final proof, an equitable title which may be transferred by him. Dale & Sons v. Griffith (Miss.) 46 So. 543; Laughlin v. Fariss, 7 Okla. 1, 50 Pac. 254; Peterson v. Sloss, 39 Wash. 207, 81 Pac. 744; Kent Co. v. Clar, 79 Wash. 543, 140 Pac. 556; Walker v. Johnson (Fla.) 43 So. 771; Nicholson v. Comgden, 95 Minn. 188, 103 N. W. 1034; United States v. Lumber Co. 67 C. C. A. 1, 131 Fed. 668, defined in 200 U. S. 321, 50 L. ed. 499; McClung v. Steen (C. C. A.) 32 Fed. 372; Gourley v. Countryman, 18 Okla. 220, 90 Pac. 427 (in this case the authorities of this point are collected); also Brake v. Blaine (Okla.) 153 Pac. 158.

A receiver's final certificate conveys the equitable title to the person named in the certificate. United States v. Lumber Co. 67 C. C. A. 1, 131 Fed. 668, defined in 200 U. S. 321, 50 L. ed. 499; McClung v. Steen (C. C. A.) 32 Fed. 372; Gourley v. Countryman, 18 Okla. 220, 90 Pac. 427 (in this case the authorities of this point are collected); also Brake v. Blaine (Okla.) 153 Pac. 158.

The exemption (U. S. Rev. Stat. § 2296) no longer applies after final proof has been made and patent issued. Ruddy v. Rossi (Idaho) 154 Pac. 977; Flannigan v. Forsythe, 6 Okla. 225, 50 Pac. 152; Hobb v. Case Thresh. Mach. Co. (Okla.) 135 Pac. 395; Mercantile Co. v. Davis, 18 Colo. 93, 36 Am. St. Rep. 266, 31 Pac. 495; Leonard v. Ross, 23 Kan. 292.

CHRISTIANSON, J. This action was brought to foreclose a mechanic's lien. The lien is claimed for certain building material which it is alleged that the plaintiff sold and delivered to the defendant Oscar Erickson between April 7, 1907, and April 20, 1907. And it is alleged that such material was used in the construction, alteration, and repair of a certain dwelling house and barn situated on the

premises involved in this action. The defendant Northern Land & Mortgage Company appeared and answered. It denied that the plaintiff had a mechanic's lien, and asserted that the said Northern Land & Mortgage Company is the owner of the premises by virtue of a sheriff's deed received by it upon the foreclosure of a certain mortgage against said premises.

The material facts in the case are undisputed. The defendant Oscar Erickson was an entryman upon the premises involved in this action, under the homestead laws of the United States of America. On April 4, 1907, he submitted his final commutation proof upon such homestead, at the local land office. The receiver's final certificate was not issued upon such proof until April 6, 1907. On April 4, 1907, after the final proof had been submitted, but two days before the final certificate was issued, Erickson contracted with the plaintiff's agent for the building material involved in the action. The evidence shows, and the trial court found, "that on April 4, 1907, and after said final proof was made . . . the said Oscar Erickson did enter into a contract with the plaintiff pursuant to which the plaintiff agreed to furnish building materials necessary for the erection, alteration, and repair of a certain barn on said premises, and the said plaintiff did on April 4, 1907, agree to and with the said defendant Oscar Erickson to furnish and deliver to said Oscar Erickson certain building materials as would be necessary for the erection, alteration, and repair of said building on said premises; that thereunder and pursuant to said contract the plaintiff furnished all of said materials in amounts and on the dates" specified in the findings of fact. The first load of building material was delivered on April 4, 1907, and the remainder on April 12, 13, and 20, 1907. The mechanic's lien was filed in the office of the clerk of the district court on August 10, 1907. The lien was filed in the office of the district court on August 10, 1907. It recited, "that between the 4th day of April, 1907, and the 20th day of April, 1907, said Bovey-Shute Lumber Company furnished certain material for the erection, alteration, and repair of a certain barn (on the land in controversy) under and pursuant to a contract therefor made with Oscar Erickson, who was then the owner of said land." The first load of building material was delivered on April 4, 1907, and the remainder on April 12, 13, and 20, 1907.

On April 13, 1907, the defendant Oscar Erickson, who was an unmarried man, for value received, executed, acknowledged, and delivered to the Northern Land & Mortgage Company a mortgage covering the premises involved in this controversy to secure the payment of the sum of $800. This mortgage was duly recorded in the office of the register of deeds on April 16, 1907. Such mortgage was subsequently duly foreclosed by advertisement and the premises sold to the Northern Land & Mortgage Company at such foreclosure sale in March, 1913. No redemption was made from such sale, and a sheriff's deed was issued to the appellant on March 13, 1914.

The trial court made no allowance for the materials delivered on April 4, 1907, but adjudged the lien to be a valid first lien upon the land for the materials furnished on April 12, 13, and 20, 1907. The usual decree of foreclosure was entered, and the defendant Northern Land & Mortgage Company appeals.

The questions presented on this appeal are: (1) Did the mechanic's lien claimed by the plaintiff ever attach to, and become a valid lien against, the land? and, (2) if such lien is valid, is it prior to the lien of the mortgage under which appellant received the sheriff's deed for the premises?

A determination of the first question depends upon and involves a construction of § 2296, U. S. Rev. Stat. Comp. Stat. § 4551, 8 Fed. Stat. Anno. 2d ed. p. 575, which reads as follows: "No lands acquired under the provisions of this act shall in any event become liable to the satisfaction of any debt contracted prior to the issuing of the patent therefor."

The power of Congress to create the exemption provided by § 2296, supra, is settled beyond question. And it is wholly beyond the power of a state in any manner to limit or impair the exemption granted by the Federal statute. 32 Cyc. 1082, 1083; Anderson v. Carkins, 135 U. S. 483, 34 L. ed. 272, 10 Sup. Ct. Rep. 905. The authorities are all agreed that the exemption extends to those who have commuted their homestead entries. See McCorkell v. Horron, 128 Iowa, 324, 111 Am. St. Rep. 201, 103 N. W. 988; Clark v. Bayley, 5 Or. 343.

"The theory of the homestead law is that the homestead shall be for the exclusive benefit of the homesteader." Anderson v. Carkins, supra. Section 2296, supra, was enacted to effectuate this policy and

encourage the settlement of the public lands. 32 Cyc. 1082. While the courts are all agreed as to the validity of the section, and the duty of the courts to enforce it, they have differed as to the construction to be placed upon it. Some courts have held that " 'the issuing of the patent' refers to the time when the patent ought to issue, and not to the mere clerical work of issuing it, and hence the homestead is liable for debts contracted after the right to a patent became complete, although before it was actually issued;" but other courts have held "that the date of the actual issuance of the patent fixes the time when the liability of the land begins, and it is not liable for debts contracted before that time, although after the right to the patent was complete." 32 Cyc. 1083. The Supreme Court of the United States has never passed upon the question.

It will be noticed that Congress used the term "the issuing of the patent." It did not say, "The issuing of the final receiver's receipt." The lawmakers were certainly familiar with the various steps in the acquisition of lands under the homestead laws. They were aware that upon a final proof a final receiver's receipt was first issued by the local land office, and that at some subsequent date a patent was issued through the General Land Office. There are fundamental distinctions between the two instruments. The final receiver's receipt "is an acknowledgment by the government that it has received full pay for the land, that it holds the legal title in trust for the entryman, and will in due course issue to him a patent. He is the equitable owner of the land. It becomes subject to state taxation, and under the control of the state laws in respect to conveyances, inheritances, etc." United States v. Detroit Timber & Lumber Co. 200 U. S. 321, 337, 338, 50 L. ed. 499, 505, 506, 26 Sup. Ct. Rep. 282. The significance of the patent, however, should not be overlooked. For "it must be remembered that the latter is the instrument which passes the legal title, and that until it is issued the legal title remains with the government, and is subject to investigation and determination by the Land Department." Ibid. See also Healey v. Fornan, 14 N. D. 449, 105 N. W. 233. In other words, the issuance of receiver's final certificate does not devest the government of title to, or the Land Department of jurisdiction over, the land. The title remains in the government until patent is issued, and the Land Department has jurisdiction over the land and may

41 N. D.—24.

cancel the entry and final certificate at any time prior to the issuance of patent, or the confirmation of the entry by the following provision in § 7 of the Act of March 3, 1891, chapter 561, 26 Stat. at L. 1095, 1099, Comp. Stat. §§ 5116, 5118, 8 Fed. Stat. Anno. 2d ed. pp. 825, 868. "That after the lapse of two years from the date of the issuance of the receiver's receipt upon the final entry of any tract of land under the homestead, timber-culture, desert-land, or pre-emption laws, or under this act, and when there shall be no pending contest or protest against the validity of such entry, the entryman shall be entitled to a patent conveying the land by him entered, and the same shall be issued to him." See Lane v. Hoglund, 244 U. S. 174, 61 L. ed. 1066, 37 Sup. Ct. Rep. 558.

It is suggested by respondent's counsel that this case is in effect controlled by Adam v. McClintock, 21 N. D. 483, 131 N. W. 394. We believe counsel is in error. Adam v. McClintock involved a mortgage,—a lien voluntarily created by virtue of contract. The courts are generally agreed that the exemption created by the Federal statute is designed merely to protect the settler against the involuntary liens arising by operation of law, and does not preclude him from voluntarily creating a lien by way of mortgage. 32 Cyc. 1084. See also Hafemann v. Gross, 199 U. S. 342, 50 L. ed. 220, 26 Sup. Ct. Rep. 80; Weber v. Laidler, 26 Wash. 144, 90 Am. St. Rep. 726, 66 Pac. 400. This being so, the mortgage is subject to the familiar equitable principles that the mortgagor is estopped from denying the recitals and assertions of title contained in the mortgage, and that the after-acquired title inures to the benefit of the mortgagee. But the lien involved in this case is an involuntary one. And the authorities all agree that a mechanic's lien is within the prohibition of the Federal statute. 27 Cyc. 28; Green v. Tenold, 14 N. D. 46, 116 Am. St. Rep. 638, 103 N. W. 398; Spiess v. Neuberg, 71 Wis. 279, 5 Am. St. Rep. 211, 37 N. W. 417; Weber v. Laidler, supra. Whether a mechanic's lien filed under our present statute, which requires the written consent of the owner before a lien may be filed, also falls within the prohibition of the statute, is not before us, and on this question we express no opinion.

With all due respect for the authorities to the contrary, we are of the opinion that § 2296, supra, means what it says. Its language is plain and unequivocal. It says that lands acquired under the pro-

visions of the homestead laws shall in no event "become liable to the satisfaction of any debt *contracted prior to the issuance of the patent therefor.*" If Congress had intended that the exemption should apply only to debts contracted prior to the issuance of the receiver's final certificate it would doubtless have said so. In order to ascertain the legislative intention the primary rule is that a statute is to receive that meaning which the ordinary reading of its language warrants. And if the language is clear and admits of but one meaning, the law-making body should be deemed to have meant what it has plainly expressed, and in such case there is no room for construction. 26 Am. & Eng. Enc. Law, 598; 36 Cyc. 1114.

The statute under consideration was enacted for the protection of the homesteader. The prohibition is clear and direct. It was the intent of the lawmakers as expressed in the statute that the homesteader should be protected against all involuntary liens arising by virtue of debts *"contracted* prior to the issuing of the patent." It is our duty to enforce the statute as enacted, and give effect to the intention of the lawmakers as expressed by the plain and unequivocal language which they have used. It may be noted that the interpretation which we place upon the statute is in harmony with the views of the United States district court of this district, and those of the supreme court of our sister state, South Dakota. See Re Cohn, 171 Fed. 568; Blair v. Mayer, 24 S. D. 563, 565, 140 Am. St. Rep. 797, 124 N. W. 722.

In the opinion of the writer, speaking for himself alone, no court has ever passed upon the precise question presented in this case, and the facts in this case readily distinguish it from all the authorities that have been cited. In the instant case it is undisputed that the debt was contracted on April 4, 1907,—two days before the final receiver's receipt was issued. The first material was delivered on that day. We therefore have a situation where the debt in satisfaction of which an involuntary lien is sought to be enforced was *contracted before the receiver's final certificate was issued.* The cases cited by respondent involved a situation where the debt had been contracted subsequent to the issuance of the receiver's final certificate, and prior to the issuance of the patent. And in Ruddy v. Rossi, 28 Idaho, 376, 154 Pac. 977, which respondent cites as the most recent judicial expression on the subject, the majority opinion lays great stress on the fact that the

debt had been contracted after receiver's final certificate had been issued, and virtually distinguishes between such debts and debts contracted before the issuance of such certificate. And the dissenting opinion in that case assumes that the issuance of the final certificate is the point which the majority members deemed controlling. The holding of the majority on this particular question is reflected in ¶ 1 of the syllabus, which reads: "Under § 2296, U. S. Rev. Stat. Comp. Stat. § 4551, 8 Fed. Stat. Anno. 2d ed. p. 575, relating to homesteads, and providing that no lands acquired under such section shall become liable to the satisfaction of any debt contracted prior to the issuing of the patent therefor, land so acquired is not liable for a debt contracted prior to the making of final proof and receiving final certificate entitling the entryman to a patent." Respondent's counsel contends that in Leonard v. Ross, 23 Kan. 293, the debt arose before the receiver's final certificate had been issued. An examination of the opinion, however, does not sustain the contention. It is true the decision does not show that final certificate had been issued, nor is any reference made in the opinion either to the issuance or nonissuance thereof. It does appear, however, from the statement of facts that the entryman made final proof and paid the purchase moneys to the local land office on May 19, 1874, and that the debt for which the land was held liable arose just before October 12, 1874. It is a matter of common knowledge to anyone familiar with the practice of local land offices that a receiver's final certificate is issued, if possible, on the same day that the proof is submitted and the purchase moneys paid to the officers of the local land office. If the receiver's final certificate is not issued on the same day that the final proof is submitted at the local office, it is issued shortly thereafter, except in cases where there is some occasion for delay arising either by reason of defects in the final proof testimony, such large amount of other business at the local land office as prevents the officers from acting upon the final proof, or some other unusual cause. But where business is normal the receiver's final certificate is ordinarily issued either on the day final proof is submitted or within a very short time thereafter. Hence, it seems clear that the final certificate must have been issued in Leonard v. Ross before the debt involved in that case arose, and so far as the opinion shows the

final certificate may have been and probably was issued on May 19, 1874, or very shortly thereafter.

It follows from what has been said that the mechanic's lien claimed by the plaintiff in the instant case never attached to the land, and that the judgment of the court below to the contrary is erroneous and must be reversed. The judgment is therefore reversed and the cause remanded, with directions that judgment be entered in harmony with the views expressed in this opinion.

ROBINSON, J. (dissenting). This is an appeal from a judgment decreeing the validity and superiority of plaintiff's lumber lien for the sum of $47.70, with interest, amounting to $105.10, and a sale of the premises to satisfy the same. From this judgment the Northern Land & Mortgage Company appeals and demands a retrial of the entire case. As alleged in the complaint it appears that in April, 1907, the plaintiff sold and delivered to defendant Oscar Erickson lumber and material to be used and which was used in the construction of a barn on the land in question. The delivery was at dates and in amounts thus:

| | | |
|---|---|---|
| 1907. April 4, | .................................................... | $23.45 |
| " 12, | .................................................... | 30.70 |
| " 13, | .................................................... | 15.80 |
| " 20, | .................................................... | 1.20 |
| Total amount | .................................................... | $71.15 |

On October 15, 1907, Erickson made to the plaintiff his promissory note for $71.15 due in one year, with interest at 12 per cent, and it is wholly unpaid. On April 29, 1907, there was duly filed a mechanic's lien for the material. On the same land to secure $800 and interest, Erickson made to appellant a mortgage. It was dated April 12, and filed April 16, 1907. The mortgagee objects to the priority of the lumber lien on these grounds:

1. The insufficiency of evidence to show that the lumber was used in the construction of the building on the land.

2. For the reason that at the time of contracting for the lien on April 4, 1907, Erickson did not own the land.

On the first point the evidence does fairly show—as found by the

trial court—that the lumber was bought and used for the construction of a barn. Erickson was in possession and in need of a barn on the land, and the proof is that the lumber was taken and used in the building, and when Erickson gave the mortgage, the bulk of the lumber was on the ground or in the barn on the land, and that was constructive notice to the mortgagee. On April 4, 1907, Erickson made final proof before the United States Land Office at Minot and commuted a homestead entry on the land in question. He paid for it to the receiver of the United States Land Office $177.13. The receiver's receipt for the same was issued on April 6 and recorded April 16, 1907. Of course, the patent did not issue until several months afterwards. Erickson contracted for the lumber and made final proof and payment for the land two days before the issuing of the receiver's receipt, and long before the issuing of a patent. Hence, the principal claim of appellant is based on this section of the United States Revised Statutes:

Section 2296 (Comp. Stat. § 4551, 8 Fed. Stat. Anno. 2d ed. p. 575): No land acquired under the provisions of this chapter shall in any event become liable to the satisfaction of any debt contracted prior to the issuing of a patent therefor. But that statute does not apply to this case because Erickson did not acquire the land under the homestead laws. He commuted his homestead entry and made final proof and payment for the land "as provided by law granting pre-emption rights." Hence, on his making such proof and payment his title was that of a purchaser under the pre-emption laws.

The moment Erickson made his final proof and payment he became the real owner of the land, and his title was not different from that of any other purchaser. The government held in trust for him only the bare legal title.

Counsel cites as directly in point, Paige v. Peters, 70 Wis. 178, 5 Am. St. Rep. 156, 35 N. W. 328. In that case the party contesting a lien for material claimed the land under the homestead laws, and not as a purchaser or commuted homestead pre-emption cash entry, and the debt was contracted for material furnished and used two months prior to the time of the making of final proof. The Wisconsin decision was entirely correct, but it is not at all in point. As this court has held the Mechanic's Lien Law is remedial and equitable, and it should be liberally construed to effect its purpose.

On April 4, 1907, when Erickson bargained for the lumber, he had a perfect equitable title to the land. There is no dispute concerning the lumber which was furnished to Erickson on April 4, 12, 13, and 20, A. D. 1907. It amounted to $71.15.

On October 15, 1907, Erickson gave his promissory note for the same, with interest at 12 per cent. As a subsequent lien holder the mortgage company does rightfully object to interest in excess of 7 per cent. Hence, the judgment should be corrected by striking out the words "forty-seven and seventy-one hundredths dollars," wherever the same occurs, and 12 per cent, and in lieu thereof inserting "seventy-one and fifteen hundredths dollars, and annual interest thereon at 7 per cent per annum," and as thus modified the judgment should in all things be affirmed.

BRUCE, Ch. J. I concur in the result reached, but not in the distinction sought to be made by Judge Robinson between a commutation proof and one under the homestead laws proper.